The Honorable Bill Sample State Representative
2340 North Highway 7 Hot Springs, Arkansas 71909-9309
Dear Representative Sample:
You have asked for my opinion regarding prohibitions on certain kinds of electioneering. I have paraphrased your two questions as follows:
 1. Election officials cannot conduct any "electioneering" on election days or on any days on which early voting is allowed. When County Clerks mail absentee ballots, many county clerks use envelopes or letterhead with their personal names rather than a reference to the "Office of the County Clerk." Does this practice violate Arkansas's prohibition on electioneering contained at A.C.A. § 7-1-103(9)(a)?[1]
 2. Arkansas law requires certain information about voters' rights be posted at polling sites. Arkansas Code Annotated 7-5-202(d) requires the Secretary of State provide this information to the county board of election commissioners which, in turn, must post the information. Those informational posters contain the name of the Secretary of State rather than a reference to the "Office of the Secretary of State."[2] If the Secretary of State is a candidate in that election, could these posters violate Arkansas's prohibition on electioneering contained at A.C.A. § 7-1-103(9)(a)? *Page 2 
RESPONSE
In my opinion, the answer to both questions is "no." In this context, given the meaning of "electioneering," neither the letterhead nor the informational posters can be plausibly construed as (1) electioneering in general or (2) violating any of the specifically mentioned forms of electioneering in subsection 7-1-103(9)(a).
DISCUSSION
I will address your questions together because the analysis and conclusions are the same. The key factual assumptions of both your questions are the same and it will be useful to set them out explicitly. You questions ask whether it constitutes electioneering to merely include the (a) name and (b) official title of (c) an election official on (d) official documents that (e) relate to a current election.
To assess your questions, we must parse the most relevant statute. Unfortunately, that statute contains several categories of prohibitions that are all strung together in two long sentences. To better parse the statute, I have quoted it in full and added bracketed numbers, for ease of reference that more clearly enumerate the statute's prohibitions. The statute has two broad prohibitions; one applies to election officials, the other applies to any person:
 [1] No election official
 [2] acting in his or her official capacity
 [3] shall do any electioneering on
 [3a] any election day or
 [3b] any day on which early voting is allowed.
 [4] Except as provided in subdivisions (a)(9)(B) and (C) of this section,
 [5] no person shall
 [5a] hand out or [5b] distribute or [5c] offer to hand out or [5d] distribute
 [6] any campaign literature or
 [7] any literature regarding
 [7a] any candidate or
 [7b] issue on the ballot,
 [8] solicit signatures on any petition,
 [9] solicit contributions *Page 3 
 [9a] for any charitable or
 [9b] other purpose, or
 [10] do any electioneering of any kind whatsoever
 [10a] in the building or
 [10b] within one hundred feet (100') of the primary exterior entrance used by voters to the building containing the polling place on election day.[3]
As you can see, the statute prohibits "electioneering" in general (under the certain circumstances enumerated in [3] and [10]) and specific instances of electioneering (enumerated in [5]-[9b]). Given this two-fold division of the statute, your questions raise two issues:
 (1) Does including the relevant officeholder's name on letterhead (re. the county clerk) or on the informational poster (re. the Secretary of State) amount to general "electioneering" under [3] or [10] of the statute?
 (2) Does including the relevant officeholder's name on letterhead (re. the county clerk) or on the informational poster (re. the Secretary of State) violate any of the specific prohibitions contained in [5]-[9b]?
To assess the first, narrow question, we need to determine what the General Assembly meant by "electioneering." While neither the statute nor case law defines the term, the word is commonly defined as "tak[ing] an active part in an election; to work for the election of a candidate or party."[4] When we interpret statutes, the primary goal is to give effect to the legislature's intent.[5]
Further, we interpret specific terms in statutes according to their common-sense meaning.[6] In this context, there is no indication that the legislature meant anything other than the above-quoted common-sense meaning of "electioneering." Thus, it seems most plausible that the legislature intended "electioneering," in this context, to prohibit *Page 4 
"taking an active part in an election" in favor of an issue, candidate, or party. Therefore, the use of "electioneering" in brackets [3] and [10] prohibit conduct that amounts to such advocacy. And the brackets [5]-[9b] prohibit specific conduct that constitutes certain kinds of electioneering.
Turning to the first, narrow question, we immediately encounter a factual problem. It is a broadly factual question whether a letterhead or information poster crosses the line from being merely informational to advocacy. While I cannot make factual determinations about particular posters or letterhead in an opinion, I understand your question to be asking about letterhead and informational posters in the abstract. In my opinion,merely including the (a) name and (b) official title of (c) an election official on (d) official documents that (e) relate to elections fails to constitute electioneering. Without more, (a)-(e) does not seem to evince the kind of advocacy required of electioneering, in my opinion.
In my opinion, the answer to the second, narrow question — whether the letterhead and informational posters constitute any of the specifically enumerated electioneering activities — is also "no." I will address each specific prohibition in turn.
The first specific kind of electioneering is distributing "campaign literature," which is undefined. But, as noted above, the statute must be read as a whole and each of the specific items enumerated at [5]-[9b] are best viewed as specific instances of electioneering. Thus, whatever each enumerated instance means, it must be evaluated in the context of advocacy for a candidate, party, or issue in an election.
Thus, we are required to determine, as best we can, the General Assembly's intent regarding "campaign literature." In my opinion, for the reasons explained below, the General Assembly probably did not have letterhead and informational posters in mind when it prohibited "campaign literature" in this context. Again, merely positing the facts listed above under (a)-(e), without more, is not enough to render those kinds of documents "campaign literature" in the sense of advocating for a particular candidate, party, or issue, in my opinion. In general, it is not the cooccurrence of a candidate's name and official title that, by itself, makes a document an electioneering document. The document's content renders it advocacy. Indeed, if (a)-(e) could render a document "campaign literature," then the ballots themselves (at primary elections) would be "campaign literature," and thus a form of electioneering. That is because the ballots may bear the current *Page 5 
officeholder's name next to his or her official title.[7] But the ballots cannot be reasonably construed as "campaign literature." Therefore, for these two reasons — the lack of any positive content that might be plausibly construed as advocacy and the analogy to ballots themselves — I believe "campaign literature" does not encompass the letterhead and informational posters you have in mind. This same analysis applies to [7]-[7b], which prohibit "literature" relating to any candidate or ballot issue.
The letterhead and informational posters you have in mind do not appear to be "soliciting signatures on any petitions," or "soliciting contributions" for any purpose. Therefore, in my opinion, neither of the scenarios you have in mind violates the third and fourth specific prohibitions, stated at [8] and [9].
In summary, you appear concerned that certain official documents contain a candidate's name and his or her official title. But that scenario, by itself, is probably not sufficient to violate subsection 7-1-103(9)(a) for two reasons. First, the scenario you have described does not indicate the kind of advocacy characteristic of electioneering. Second, the ballots themselves may contain the names and official titles of candidates.
Assistant Attorney General Ryan Owsley prepared the foregoing opinion, which I hereby approve.
Sincerely,
Dustin McDaniel Attorney General
DM/RO:cyh
[1] Given your repeated references to "electioneering," I have limited my analysis to this statute, which is most applicable to electioneering.
[2] I do not know whether this is, in fact, the case. I merely accept your representation for purposes of this opinion.
[3] A.C.A. § 7-1-103(9)(a) (Supp. 2009) (emphasis and brackets added).
[4] Webster's Seventh New Collegiate Dictionary 266 (7th ed. 1972); Op. Att'y Gen. Nos. 2004-268, 93-306.
[5] See Landers v. Arkansas Dept. of Educ.,2010 Ark. App. 312, 3, ___ S.W.3d ___ (Apr. 14, 2010) ("The basic rule of statutory construction . . . is to give effect to the intent of the legislature.").
[6] E.g., Kyle v. State,312 Ark. 274, 849 S.W.2d 935 (1993).
[7] A.C.A. § 7-7-305(c)(1)(A) (Supp. 2009). *Page 1